UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

EDGAR T. RODRIGUEZ,

                                        Plaintiff,

                    v.

TIMOTHY HUNT, an individual; MARK
HUBBARD, an individual; FAITH
McCREADY, an individual; and CITY OF
EUGENE, a municipal corporation,

                                        Defendants.

Case No. 6:18-cv-01640-MK

**FINDINGS AND
RECOMMENDATION**

**KASUBHAI,** United States Magistrate Judge:

 Plaintiff Edgar T. Rodriguez filed this lawsuit for civil rights violations under 42 U.S.C. § 1983 and tort claims under Oregon state law. Defendants include the City of Eugene as well as individuals Timothy Hunt, Mark Hubbard, and Faith McCready. Before the Court is (1) Defendants' Motion for Partial Summary Judgment and Defendant Faith McCready's Motion for Judgment on the Pleadings (ECF No. 123) and (2) Plaintiff's Motion for Partial Summary Judgment (ECF No. 134). For the reasons below, all parties' motions should be granted in part and denied in part.

/ / /

/ / /

Page 1 — FINDINGS AND RECOMMENDATION

## BACKGROUND

On September 10, 2016, at 12:51 a.m., 911 call-taker Defendant McCready received a 911 call from Plaintiff, who reported a domestic dispute between two guests—later identified as a Mr. Cozad and Ms. Rodgers—in his apartment. Larwick Decl. I Ex. 1 at 2:1, 2:18-3:12 ECF No. 135; Miller Decl. I Ex. 3 at 237:3-8, ECF No. 124. Defendant McCready gathered information about the appearances of the individuals involved in the dispute and learned that Plaintiff had removed two guns into a separate room. Larwick Decl. I Ex. 1 at 4:5-5:15. Defendant McCready then told Plaintiff that help was on the way, and Plaintiff ended the call. *Id.* at 7:4-25.

At 12:57 a.m., Defendant McCready called Plaintiff back to find out which building he was in and told Plaintiff that there were officers "in the area." *Id.* at 8:6-21. Plaintiff told Defendant McCready that Mr. Cozad was hitting Ms. Rodgers but that Plaintiff could not do anything "without some sort of assistance from weapons." *Id.* at 9:4-7. Defendant McCready asked whether Plaintiff was located on the first or second story of the building, and Plaintiff told her it was not a double story building. *Id.* at 9:8-11. After Defendant McCready told Plaintiff that one officer had arrived and that another was coming as backup, Plaintiff and Defendant McCready ended their call. *Id.* at 9:12-21.

Plaintiff was locked inside the bathroom with a .50 caliber handgun. Miller Decl. I Ex. 3 at 239:3-240:12. Plaintiff testified that Mr. Cozad was trying to break into the bathroom but that at a certain point after the 911 calls ended, Ms. Rodgers and Mr. Cozad disappeared. *Id.* at 240:13-241:19. Plaintiff then emerged from the bathroom holding the .50 caliber handgun by the barrel because he believed that the police were in the wrong place based on Defendant McCready's question about a two-story building. *Id.* at 241:20-242:9. Plaintiff believed the

weapon to be unloaded but had not checked. *Id.* at 242:18-243:7. It was later discovered that the weapon was loaded. Miller Decl. II Ex. 12 at 1612:11-1614:2, ECF No. 146. Plaintiff then walked out the front door of his apartment. Miller Decl. I Ex. 3 at 244:20-23. Plaintiff testified that he did not know where Mr. Cozad and Ms. Rodgers were and that he hoped to secure the .50 caliber handgun in the trunk of his vehicle. *Id.* at 258:19-259:4.

When Plaintiff walked out of his apartment, Defendant Hubbard, a responding Eugene Police Officer, was standing near a bush at the corner of the building waiting for another officer (Defendant Hunt) to arrive. Larwick Decl. I Ex. 3 at 26:2-27:25, ECF No. 135. Defendant Hubbard had driven up to the location with lights, sirens, and headlights off in order to avoid announcing his presence as a police officer. *Id.* at 27:9-25.

The parties have different accounts of what happened after Plaintiff walked out of his apartment. Plaintiff testified that he stepped about two feet out of the apartment, did not hear or see any sign of police officers, then heard what he thought was a neighbor yell "gun," and was shot. Miller Decl. I Ex. 3 at 249:8-250:24.

By contrast, Defendant Hubbard testified that when he heard footsteps and saw a shadow, he stepped out from the corner, shined his flashlight towards Plaintiff, and stated "[h]ey, buddy, what's going on?" Miller Decl. I Ex. 4 at 1239:20-1240:10, 1240:21-1241:10. Defendant Hubbard testified that Plaintiff then:

> immediately snapped his head up and looked right --  right in my eyes and by his body positioning and everything else that I was seeing my eyes were immediately drawn to kind of his waist section where I could see he was --  he was holding a -- very large handgun at what -- what I would describe as a low ready position and as he was advancing towards me.

*Id.* at 1241:11-23. Defendant Hubbard testified that he then started backing up and drew his own handgun, telling Plaintiff to drop the gun. *Id.* at 1243:16-1245:6. He fired three shots after Plaintiff began raising his gun. *Id.*

Defendant Hunt testified that soon after he arrived, he heard Defendant Hubbard address someone verbally, and then heard him say "drop the gun. Drop the gun." Miller Decl. I Ex. 5 at 1475:21- 1476:14, ECF No. 124. He saw Plaintiff standing on a walkway holding a large gun in a "very stable shooting stance." *Id.* at 1475:21-1476:23. He then fired eight rounds at Plaintiff, believing that Plaintiff was about to engage Defendant Hubbard with the gun. *Id.* at 1479:2-25.

A Use of Force Review Board reviewed the facts of the case and issued a memorandum concluding that Defendants Hubbard and Hunt acted within Eugene Police Department training and policy. Kerns Decl. Ex. 1 at 4, ECF No. 129. The acting Eugene Police Chief at the time, Pete Kerns, initialed his concurrence with the memorandum on November 28, 2016. *Id.* at 1; Kerns Decl. at 1, ECF No. 128. Defendants Hunt and Hubbard later received "Distinguished Service with Valor" awards for their conduct in the incident. Larwick Decl. II Exs. 1, 2, ECF No. 150.

## STANDARDS

### I.    Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## II.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, the same standard applies to both motions. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)). The court must accept the complaint's factual allegations as true and construe those facts in the light most favorable to the non-movant, *id.*, but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged

conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 679.

## DISCUSSION

### I.    Defendants' Motions

#### A.    Faith McCready's Motion for Judgment on the Pleadings or Alternatively for Summary Judgment

Defendants first move for judgment on the pleadings or alternatively for summary judgment on the claims against Defendant McCready. In response, Plaintiff clarifies that his claim against Defendant McCready is for negligence only. Pl. Resp. 2. Accordingly, Defendant is entitled to summary judgment on Plaintiff's First, Second, Fourth, and Fifth Claims for Relief to the extent such claims are asserted against Defendant McCready.

As to Plaintiff's Third Claim for Relief, "Negligence against City of Eugene," Defendant McCready argues (1) that she is entitled to judgment on the pleadings because Plaintiff's Third Claim for Relief does not name Defendant McCready, or, alternatively, (2) that she is entitled to summary judgment because Plaintiff did not provide an expert declaration to support his argument that Defendant McCready was negligent.

##### 1.    Motion for Judgment on the Pleadings

First, the Court finds Plaintiff's failure to include Defendant McCready's name in the heading of her Third Claim for Relief is not dispositive for purposes of a motion for judgment on the pleadings. Defendants' conclusory assertion to the contrary is unsupported by any authority and ignores the pleading standards and facts pled in Plaintiff's Complaint. Rule 8 requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Tellabs, Inc. v. Makor Issues & Rts.,*

*Ltd.*, 551 U.S. 308, 319 (2007) (internal quotation omitted). Here, despite the absence of Defendant McCready's name in the heading of Plaintiff's Third Claim for Relief, the claim itself pleads: "Defendants' actions as alleged above violated the standard of care required of law enforcement, *including dispatchers*." Compl. ¶ 49, ECF No. 1 (emphasis added). Not only does the claim mention Defendants in the plural, it also specifically refers to dispatchers.[1] Further, the Complaint contains detailed allegations regarding Defendant McCready's conduct which, taken as true and viewed in the light most favorable to Plaintiff, allege a plausible negligence claim against Defendant McCready. *See* Compl. ¶¶ 14-18, 20-21. In sum, the Complaint adequately states a claim for relief and puts Defendant McCready on fair notice of the negligence claim against her and the factual basis for it. Her Motion for Judgment on the Pleadings should be denied.

2.    <u>Motion for Summary Judgment</u>

Turning to Defendant McCready's alternative motion for summary judgment, the Court rejects Defendants' argument that the motion must be granted simply because Plaintiff did not support her opposition with an expert declaration. Defendant McCready contends that "[l]ike with a medical professional or attorney, expert testimony is necessary to establish the prevailing standard of care." Defs.' Reply 2. She cites several cases which relate to the need for expert testimony to support a medical or legal malpractice claim. *See Creasey v. Hogan*, 292 Or. 154, 165-67 (1981) (discussing the required foundation for expert testimony in medical malpractice cases); *Thorson v. Bend Mem'l Clinic*, 291 Or. App. 33, 36 (2018) (expert testimony required in medical malpractice case because "the appropriate standard for prescribing Ativan and the standards governing the diagnosis of the cause of seizures in a patient with plaintiff's

---

[1] Although Defendant McCready was a "call-taker" rather than a "dispatcher," she is identified in the Complaint as a dispatcher. Compl. ¶ 8.

characteristics—involve matters beyond the experience of an ordinary lay juror"); *Pereira v. Thompson*, 230 Or. App. 640, 654 (2009) (proving legal malpractice "often requires expert evidence setting forth the appropriate standard of care owed by a reasonable attorney and how the defendant failed to uphold that standard"). Defendants rely on these cases for the proposition that, because Plaintiff did not submit an expert declaration opining that Defendant McCready met the standard of care for a call-taker, he cannot survive summary judgment.

But under Oregon law, "expert testimony is not required when the circumstances are such that it would be within the capacity of a lay juror to understand the issues without expert assistance." *Thorson*, 291 Or. App. at 36. "Expert testimony is not required if, without an expert's opinion, the jury is capable of deciding whether the professional's conduct was reasonable." *Vandermay v. Clayton*, 328 Or. 646, 655 (1999). Defendant does not provide case law recognizing an expansion of the rule requiring expert testimony to similar cases, nor does she provide any argument as to why a lay juror would not be able to understand the issues raised by Plaintiff's negligence claim against Defendant McCready. The factual issues at hand in deciding whether Defendant McCready was negligent arenot of the type of technical standard of care issues raised in medical and legal malpractice claims and it is well within a lay juror's capability to decide whether Defendant McCready's actions were reasonable based on the evidence. A jury is capable of and entitled to weigh evidence about what Defendant McCready did and did not do in the course of her calls with Plaintiff and decide whether she was negligent, even in the absence of expert testimony from Plaintiff. Accordingly, Defendants' alternative motion for summary judgment on Plaintiff's negligence claim against Defendant McCready should be denied.

/ / /

### B.     *Monell* Claim

Defendants also move for summary judgment against Plaintiff's claim for municipal liability under Section 1983 against Defendant City of Eugene, arguing that Plaintiff cannot offer any evidence from which a jury could conclude that Defendant City of Eugene had a pattern and practice of unconstitutional conduct.

In certain circumstances, a municipality may be held liable as a "person" under Section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Liability only attaches where the municipality itself causes the constitutional violation through the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *see also Gillette v. Delmore,* 979 F.2d 1342, 1347 (9th Cir. 1992) ("[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability") (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988)).

There are three methods by which a plaintiff may establish municipal liability under *Monell*. First, a local government may be liable where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[s] the injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [government entity]

can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Here, Plaintiff advances two theories of municipal liability: (1) that the City had a custom or practice of unconstitutional conduct when responding officers' behavior, and (2) that a final policymaker ratified Defendant Hubbard and Defendant Hunt's unconstitutional conduct. The Court addresses each in turn.

### 1.    Custom or Practice Regarding Responding Officers' Behavior

Plaintiff first argues that a jury could find *Monell* liability based on a pattern or practice "of responding City of Eugene police officers to wear an all-black uniform with no reflective parts, to arrive to the scene without lights and sirens and to park far away and sneak up through the darkness on foot, and for the officer to say phrases like 'Hey buddy, what's going on' rather than identifying oneself as a police officer before shooting people" Pl. Resp. 7. Under this theory, a municipality may be liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. "A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

*/ / /*

Here, Plaintiff relies on testimony from Defendant Hubbard that on the night of the shooting he was not wearing anything reflective, he arrived without lights or sirens, and said "Hey, buddy, what's going on" rather than "police." Larwick Decl. II Ex. 5 at 50:4-7; Larwick Decl. I Ex. 3 at 27:14-25; Larwick Decl. II Ex. 6 at 29:8-20. This evidence is insufficient to create a genuine issue of fact as to the existence of a custom or policy of unconstitutional conduct. There is no evidence that other officers have engaged in similar conduct historically and therefore no evidence from which a jury could conclude that Defendants' acts may fairly be said to represent official policy. Because Plaintiff's evidence relates solely to the incident in question, it cannot establish a policy or custom sufficient to establish *Monell* liability.

2.    Ratification

Plaintiff next argues that final policymakers ratified Defendant Hunt and Defendant Hubbard's unconstitutional conduct by issuing them distinguished service awards and finding that they operated within the City's policies related to the shooting.  Under a ratification theory, "a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quotations and citation omitted). Ratification is typically a question for the jury, but a plaintiff must still "establish that there is a genuine issue of material fact regarding whether a ratification occurred." *Id.* Defendants contend that Plaintiff never pled a ratification theory, and that even if he did there is insufficient evidence to go to a jury on this theory. The Court agrees with Defendants that a ratification theory was not pled and may not now be relied on to survive summary judgment.

First, where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008),

*overruled in part by Apache Stronghold v. United States*, 101 F.4th 1036, 1043 (9th Cir. 2024).

Here, Plaintiff pled the following as the basis for his *Monell* claim:

> 60.      Prior to September 10, 2016, defendant City of Eugene developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of people to whom their employees would interact with and respond to, which caused the violation of Mr. Rodriguez's rights.

> 61.      It was the policy and/or custom of defendant city of Eugene to inadequately supervise and train its officers and dispatchers, including defendants, thereby failing to adequately hinder further constitutional violations on the part of its employees. City of Eugene did not require adequate training or retraining for officers who have engaged in misconduct.

Compl. ¶¶ 60-61. Neither these paragraphs, nor any of the others in this Court's review of the Complaint, plead the ratification theory Plaintiff now asserts in opposition to Defendants' motion. While the Court acknowledges that a plaintiff need not use the magic word "ratification," Plaintiff's Complaint does not put the City on notice of that theory. It does not plead even a conclusory statement that a policymaker ratified the conduct at issue, let alone any facts upon which such a theory would be based. *See Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ("To show ratification, a plaintiff must show that the 'authorized policymakers approve a subordinate's decision and the basis for it.'") (citation omitted). Plaintiff's allegations focus on the customs and practices in place before the shooting, not the ratification of conduct after it. In other words, Plaintiff failed to plead any facts that would put Defendant City of Eugene on notice of the factual basis of a ratification theory, even if Defendants understood that such a theory was asserted. Because this theory was not pled, it cannot provide a basis to oppose Defendants' summary judgment motion against this claim.

There is therefore no genuine issue of material fact on the issue of *Monell* liability and Defendant City of Eugene should be granted summary judgment on that claim.

### C.    Negligence Claim

Finally, Defendants move for summary judgment on Plaintiff's negligence claim (Third Claim for Relief). Defendants' argument is based on a string citation to decisions in this district which have held that "it is settled law in this district that 'a state common-law claim of negligence may be maintained separately from a § 1983 claim *only* when th e negligence claim is based on facts that are different from the facts on which the § 1983 claims are based.'" *Lifestyle Ventures, LLC v. County of Clackamas*, No. 3:15-CV-1291-SB, 2016 WL 11394982, at *5 (D. Or. May 18, 2016) (citation omitted) (collecting cases); *but see Johns v. City of Eugene*, No. 6:16-CV-00907-AA, 2018 WL 634519, at *11 (D. Or. Jan. 30, 2018) (finding that "neither federal nor Oregon law prohibits negligence claims and civil rights claims based on the same set of facts from proceeding to trial together"), *rev'd on other grounds*, 771 F. App'x 739 (9th Cir. 2019).

As an initial matter, there can be no "settled law" based on other district court decisions, which are not controlling. Defendants have cited no binding authority setting forth a bright line rule that negligence and Section 1983 excessive force claims cannot coexist, and provide no argument as to why this Court should follow the reasoning of those cases. The binding authority on which those district court cases rely relates to the general proposition that intentional conduct is categorically not negligence. *See Kasnick v. Cooke*, 116 Or. App. 580, 582-583 (1992) ("There is no such thing as a negligent fist fight."). Defendants argue that because Section 1983 excessive force claims require proof of intentional conduct, there can be no negligence claim based on the same facts.

But here, the negligence and excessive force claims are not coextensive with one another such that the *Kasnick* rationale should bar a negligence claim. Specifically, Plaintiff's Complaint includes allegations relating to the actions of Defendants McCready, Hubbard, and Hunt leading

up to the shooting, including the information obtained and relayed during the 911 calls, the lack

of lights or sirens as Defendants Hubbard and Hunt arrived, and their failure to identify

themselves as police. In other words, there are facts alleged as to Defendants' alleged *creation* of

the risks that led to the confrontation and shooting, which can be understood separately from the

Section 1983 claim relating to the shooting itself. The Court concludes that there is nothing in

any binding authority precluding Plaintiff from trying this particular negligence claim and a

Section 1983 claim concurrently. Defendant City of Eugene should be denied summary

judgment on the negligence claim (Third Claim for Relief).

## II.     Plaintiff's Motions

Plaintiff moved for summary judgment against ten of Defendants' affirmative defenses.

Since then, several of the motions have been become moot or were conceded either explicitly or

by virtue of Defendants' representations about their applicability. Specifically, Defendants

concede Plaintiff's motion against Defendants' Fourth and Fifth Affirmative Defenses, noting

that Defense Counsel had already said that they were unopposed to eliminating these affirmative

defenses. Defs.' Resp. 10-11. Thus, summary judgment should be entered in favor of Plaintiff on

Defendants' Fourth and Fifth Affirmative Defenses. Second, Defendants conceded in their

briefing that their Eleventh Affirmative Defense does not apply to any of Plaintiff's currently-

pled claims. Plaintiff is therefore entitled to summary judgment on that affirmative defense.[2]

Finally, Defendant Hubbard has since voluntarily dismissed his Seventh, Eighth, and Ninth

Affirmative Defenses. Plaintiff's motion with respect to these defenses should be denied as moot

since they have already been dismissed and related only to Defendant Hubbard.

---

[2] If Plaintiff seeks leave to amend during trial to conform to the evidence, Defendants may
reassert this defense to the extent it is applicable to any amendments permitted by the Court.

The Court addresses the remaining contested affirmative defenses in turn below.

**A.    Second Affirmative Defense ("Legal Justification")**

In his "Motion 1," Plaintiff moves for summary judgment against Defendants' Second Affirmative Defense, titled "legal justification." That defense reads, in its entirety: "[t]he actions of defendants toward plaintiff were legally justified and lawful." Answer ¶ 68, ECF 9. Plaintiff argues that this defense is not a true affirmative defense but rather a denial of liability. Defendants contend that this affirmative defense is based on (1) the elements of a Section 1983 excessive use of force claim, and (2) Or. Rev. Stat. ("ORS") 161.239 (repealed 2020) (a since-repealed Oregon statute justifying officers' use of deadly force in particular circumstances) with respect to the state law battery claim.

Plaintiff's own argument belies his entitlement to summary judgment. If, as Plaintiff argues, this is not an affirmative defense but instead a denial of liability, then whether pled in their answer or not, Defendants would have a right to make the argument that they are not liable because their actions were justified and lawful. *See, e.g.*, *Zikovic v. Southern California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense."). In other words, pleading this as an affirmative defense was wholly unnecessary. But that does not mean that Plaintiff is entitled to summary judgment. If Plaintiff's position is that this is not a proper affirmative defense, then the proper procedure would be a motion to strike. The Court will not adjudicate the merits of this question based on a pleading quibble that "legal justification" is not a true affirmative defense. There is a question of fact as to whether Defendants' use of force was in fact justified and lawful. Indeed, neither side has moved for summary judgment on the excessive use of force claim against the individual officers or the state law battery claim. The Court declines Plaintiff's invitation to address this pleading issue at the summary judgment stage.

**B.    Third Affirmative Defense (ORS 31.180 tort immunity)**

Plaintiff's "Motion 2" seeks summary judgment on Defendants' Third Affirmative

Defense which asserts that "Defendants may be immune to liability under ORS 31.180." Answer

¶ 69. ORS 31.180 provides, in relevant part:

> (1) It is a complete defense in any civil action for personal injury or wrongful death
> that:
>> (a) The person damaged was engaged in conduct at the time that would
>> constitute aggravated murder, murder or a Class A or a Class B felony; and
>
>> (b) The felonious conduct was a substantial factor contributing to the injury
>> or death.
>
> (2) To establish the defense described in this section, the defendant must prove by
> a preponderance of the evidence the fact that the person damaged was engaged in
> conduct that would constitute aggravated murder, murder or a Class A or a Class B
> felony.
>
> (3) Nothing in this section affects any right of action under 42 U.S.C. 1983.

First, the statute by its own terms does not provide a defense to a Section 1983 claim, so

Plaintiff is entitled to summary judgment on this defense insofar it relates to his Section 1983

claim.

As to the applicability of this defense to the state law claims, Plaintiff contends that the

only crime Plaintiff was charged with—Unlawful Use of a Weapon—is not "conduct…that

would constitute aggravated murder, murder or a Class A or a Class B felony" and is therefore

not subject to the statute. Defendant argues that what Plaintiff was ultimately criminally charged

with is irrelevant and that sufficient evidence exists in the record from which a jury could

reasonably conclude that Plaintiff was engaged in conduct constituting Attempted Manslaughter

in the First Degree or Attempted Assault in the First Degree, both of which are subject to the

statute.

/ / /

Manslaughter in the First Degree is criminal homicide "committed recklessly under circumstances manifesting extreme indifference to the value of human life." ORS 163.118(1)(a). Attempted Assault occurs when a person "Intentionally causes serious physical injury to another by means of a deadly or dangerous weapon." ORS 163.185(1)(a). A person is guilty of an attempt to commit the above crimes when they "intentionally engage[] in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). Both Attempted Assault in the First Degree are Class B felonies which would be subject to ORS 31.180. ORS 163.118(3), ORS 163.185(3), ORS 161.405(2)(b). The question, then, is whether a reasonable jury could find that Plaintiff was engaged in conduct that would constitute either of the above crimes.

Defendant relies on sixteen statements, labelled a through g, which together they argue would permit a reasonable jury to conclude that Plaintiff made a substantial step towards the commission of the above-listed crimes. Plaintiff contests both the evidence on which Defendants rely and its sufficiency to establish a genuine issue of fact. As to the evidentiary issues, Plaintiff objects to the admissibility of various hearsay statements. But in the Ninth Circuit, a court may consider evidence on a motion for summary judgment that, while not necessarily admissible in their submitted form, "could later be provided in an admissible form at trial." *J & J Realty Holdings v. Great Am. E & S Ins. Co*, 839 F. App'x 62, 65 (9th Cir. 2020) (citing *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Thus, "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In *Fraser*, the Ninth Circuit explained that while a personal diary may be inadmissible hearsay, its contents may be considered on summary judgment because "[t]he contents of the diary are mere

recitations of events within [the Plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways" including by the Plaintiff's testimony at trial about events recounted in the diary based on her personal knowledge. *Id.* at 1037.

As most relevant to this motion, Plaintiff objects on hearsay grounds to the admissibility of a transcript of a police interview of Brittny Lupton, an individual who was present with Plaintiff prior to the shooting. *See* Miller Decl. II Ex. 7. Defendants also offer a Facebook message from Ms. Lupton to Plaintiff regarding the incident. Miller Decl. II Ex. 13. While this transcript and message would be inadmissible hearsay in their current form, their contents— statements by witness Brittny Lupton—could be offered in the form of live testimony by Ms. Lupton during trial about what she witnessed. Thus, the police transcript offered here is akin to the personal diary in *Fraser*. Plaintiff's objection to this evidence in his reply provides no argument or assertion why Ms. Lupton would not be available to testify live at trial. The Court is satisfied that the contents of the Lupton transcript and Facebook message could be admissible at trial through her live testimony and will consider them in resolving this motion.

When the Lupton evidence is considered alongside other evidence Plaintiff does not object to, the Court concludes that a reasonable jury could find in Defendants' favor on this affirmative defense. In particular, there is evidence that Plaintiff was under the influence of marijuana and alcohol the night of the shooting. Miller Decl. II Ex. 7 at 10-11, ECF 146. Plaintiff knew that it was not safe to consume alcohol or controlled substances and handle firearms. Miller Decl. II Ex. 9 at 116:2-10. Plaintiff had been told that one officer had already arrived and that another was on the way. Larwick Decl. I Ex. 1 at 9:12-14. Although Plaintiff did not check to see if the gun was loaded, it was. Miller Decl. II Ex. 9 at 241:9-243:7; Miller Decl. II Ex. 12 at

1612:11-1614:2. Plaintiff was trained not to point a firearm at a target unless he intended to use the weapon. Miller Decl. II Ex. 9 at 117:1-6. There is also testimony that Plaintiff, upon being addressed by Defendant Hubbard, looked up at him and began to lift his gun with both hands. Miller Decl. II Ex. 1 at 18:20-19:11. While there is also evidence contesting or providing alternative versions of these facts, the Court must view all evidence and draw all inferences in favor of Defendants in resolving this motion. Applying that standard, a reasonable jury could conclude from these facts that Plaintiff was engaged in conduct which provides a defense to state law claims under ORS 31.180.

In sum, Plaintiff's motion for summary judgment on Defendants' Third Affirmative Defense should be granted with respect to Plaintiff's Section 1983 claims but denied with respect to Plaintiff's state law claims.

### C.    Sixth Affirmative Defense (failure to state a claim)

In his "motion 5," Plaintiff moves for summary judgment on this affirmative defense as it relates to all Defendants except Defendant McCready. *See* Pl. Reply 8. This defense provides: "One or more of plaintiff's claims fails to state a claim upon which relief can be granted." Answer ¶ 72. Plaintiff argues that "this affirmative defense is so vague and ambiguous that Plaintiff cannot reasonably prepare a response." Pl. Mot. 12. He contends that Defendants must point out which claims are improperly pled.

As with Defendants' "legal justification" affirmative defense, this is not an affirmative defense at all. As the Court understands Defendants' arguments in the briefing and at oral argument, the assertion that Plaintiff has failed to state a claim is merely a restatement of Defendants' rights to move to dismiss or move for judgment on the pleadings. Whether pled as an affirmative defense or not, Defendants have these procedural mechanisms available to them. Nevertheless, as noted above with respect to the "legal justification" affirmative defense, the

proper vehicle to dispose of this as an improper defense would have been a motion to strike. For the same reasons the Court explained with respect to that motion, this motion should likewise be denied.

### D.    Fourteenth Affirmative Defense (fault of others)

Finally, in "Motion 10," Plaintiff moves to dismiss Defendants' Fourteenth Affirmative Defense, which states "Plaintiff's damages, if any, were the sole and exclusive fault of others for whom defendants are not responsible and for whose actions defendants are not liable." Answer ¶ 80. Defendants contend that "Renee Rogers and Anthony Cozad were the 'but for' and 'substantial factors' causing Plaintiff's decisions to summon police, to arm himself, to leave the apartment with the handgun, and to point the handgun at Officer Hubbard." Def. Resp. 12.

Defendants' affirmative defense mirrors the language of ORS 31.600(5) which provides that a party may allege that it is not at fault "because the injury or death was the sole and exclusive fault of a person who is not a party in the matter." Their opposition to Plaintiff's motion relies on evidence that Plaintiff only summoned the police that shot him and only handled the gun at issue because of the actions of Ms. Rogers and Mr. Cozad. Defendants' argument fails because it conflates the concepts of "but for" causation[3] with "sole and exclusive fault." The Oregon Supreme Court has explained that "a but-for instruction is not intended to tell a jury—and, by its terms, does not tell a jury—that a defendant's conduct must be the *only* or even the *predominate* cause of the plaintiff's injury." *Haas v. Est. of Carter*, 370 Or. 742, 749

---

[3] Defendants also refer to "substantial factor" causation, but that concept by its very terms acknowledges more than one cause, precluding the establishment of a "sole and exclusive" cause. *See Haas*, 370 Or. at 750 ("The substantial factor test was developed primarily for…the situation in which the concurrent conduct of two or more causes combine to create an injury, and either one of those causes, operating alone, would have been sufficient to produce the same result").

(2023). Applying that logic to the circumstances and legal issue here, just because Plaintiff would not have been shot "but for" Ms. Rogers and Mr. Cozad's conduct (assuming a jury so concluded), that does not mean their conduct was the *sole* cause of his injury for purposes of ORS 31.600(5). And, considering the evidence in the record on the conduct of the parties to this case, no reasonable juror could so conclude. Accordingly, Plaintiff's motion for summary judgment on this affirmative defense should be granted.

## RECOMMENDATION

For the reasons above, Defendants' Motion for Partial Summary Judgment and Defendant Faith McCready's Motion for Judgment on the Pleadings (ECF No. 123) should be GRANTED IN PART AND DENIED IN PART as follows:

- Defendant Faith McCready's Motion for Judgment on the Pleadings: denied.
- Defendant Faith McCready's Alternative Motion for Summary Judgment: granted as to Plaintiff's First, Second, Fourth, and Fifth Claim for Relief; denied as to Plaintiff's Third Claim for Relief.
- Defendant City of Eugene's Motion for Summary Judgment on Plaintiff's Fifth Claim for Relief (Excessive Force): granted.
- Defendant City of Eugene's Motion for Summary Judgment on Plaintiff's Fourth Claim for Relief (Intentional Infliction of Emotional Distress): granted as conceded.
- Defendant City of Eugene's Motion for Summary Judgment on Plaintiff's Third Claim for Relief (Negligence): denied.

Plaintiff's Motion for Partial Summary Judgment (ECF No. 134) should be GRANTED IN PART AND DENIED IN PART as follows:

- Motion 1 on Defendants' Second Affirmative Defense: denied.
- Motion 2 on Defendants' Third Affirmative Defense: granted as to Plaintiff's Section 1983 claims, otherwise denied.
- Motions 3 & 4 on Defendants' Fourth and Fifth Affirmative Defenses: granted as conceded.
- Motion 5 on Defendants' Sixth Affirmative Defense: denied.

- Motions 6-8 on Defendants' Seventh, Eighth, and Ninth Affirmative Defenses: denied as moot.
- Motion 9 on Defendants' Eleventh Affirmative Defense: granted.
- Motion 10 on Defendants' Fourteenth Affirmative Defense: granted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the district court's judgment or appealable order. The Findings and Recommendation will be referred to a district judge. Objections to this Findings and Recommendation, if any, are due fourteen (14) days from today's date. *See* Fed. R. Civ. P. 72. Failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED this 25th day of September 2024.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge